## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FTX TRADING LTD. *et al.*,[1] | Case No. 22-11068 (KBO) |
| *Debtors*, | (Jointly Administered) |
| FTX RECOVERY TRUST | |
| *Plaintiff*, | |
| - against - | Adv. Pro No. 24-50212 (KBO) |
| THE GOODLY INSTITUTE dba GOODLY LABS | |
| *Defendant*. | |

## DEFENDANT'S REPLY IN SUPPORT OF ITS
## MOTION TO DISMISS THE COMPLAINT

Date:   November 10, 2025

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**

*/s/  Daniel A. Mason*
Daniel A. Mason (Del. Bar No. 5206)
1313 North Market Street
Wilmington, DE 19801
Telephone: (302) 655-4410
Fax: (302) 397-2710
Email: dmason@paulweiss.com

William A. Clareman (admitted *pro hac vice*)
Vida J. Robinson (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019-6064

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.   Due to the large number of debtor entities in these Chapter 11 cases, a complete list of the Debtors and the last four digits of their federal tax identification numbers is not provided herein.   A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.

Telephone: (212) 373-3000
E-mail:  wclareman@paulweiss.com
        virobinson@paulweiss.com

*Counsel for Defendant The Goodly Institute*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.     The Complaint Fails to Allege a Transfer of a Debtor's Interest in Property .................... 2

       A.    The Complaint Does Not Allege Any Transfer of a Debtor's Property ................. 3

       B.    The Complaint Does Not Allege Any Alter Ego Basis for Liability ..................... 7

II.    The Complaint Does Not Allege Actual Fraudulent Transfer .......................................... 10

       A.    The Complaint Does Not Allege Intent to Defraud FTX Philanthropy's Creditors .............................................................................................................. 10

       B.    The Complaint Fails to Allege Intent to Defraud Even FTX Group Creditors ............................................................................................................... 10

       C.    Plaintiff's Badges of Fraud Fail to Raise an Inference of Fraudulent Intent ........ 13

III.   The Complaint Fails to Plead a Claim Under Section 550(a) ........................................... 14

IV.   The Complaint Fails to State an Unjust Enrichment Claim .............................................. 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Autobacs Strauss, Inc.*,
  473 B.R. 525 (Bankr. D. Del. 2012) .......................................................................9

*In re BYJU's Alpha, Inc.*,
  2025 WL 665294 (Bankr. D. Del. Feb. 27, 2025) ..................................................13

*Carber* v. *Manor Care of Wilmington DE, LLC*,
  2024 WL 4333011 (D. Del. Sept. 27, 2024)............................................................8

*In re Carrozzella & Richardson*,
  286 B.R. 480 (D. Conn. 2002)...............................................................................11

*Crystallex Int'l Corp.* v. *Petroleos de Venez.*,
  879 F.3d 79 (3d Cir. 2018).......................................................................................3

*Drivetrain, LLC* v. *X. Com., Inc.*,
  2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023) ................................................12

*In re FBI Wind Down, Inc.*,
  581 B.R. 387 (Bankr. D. Del. 2018) ........................................................................5

*In re FTX Trading Ltd.*,
  2024 WL 4562675 (Bankr. D. Del. Oct. 23, 2024) ...............................................11

*United States* v. *Golden Acres, Inc.*,
  702 F. Supp. 1097 (D. Del. 1988)............................................................................8

*Handal* v. *Innovative Indus. Props., Inc.*,
  __ F.4th __, 2025 WL 2922871 (3d Cir. Oct. 15, 2025) ........................................6

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ......................................................................10

*In re J & M Sales Inc.*,
  2021 WL 12360932 (Bankr. D. Del. Aug. 20, 2021) ............................................14

*In re Live Well Fin., Inc.*,
  652 B.R. 699 (Bankr. D. Del. 2023) ......................................................................12

*In re Mallinckrodt PLC*,
  2024 WL 206682 (Bankr. D. Del. Jan. 18, 2024)..................................................13

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*In re Manhattan Inv. Fund Ltd.*,
397 B.R. 1 (S.D.N.Y. 2007)..................................................................12

*Mason* v. *Network of Wilmington, Inc.*,
2005 WL 1653954 (Del. Ch. July 1, 2005).................................................8

*In re Maxus Energy Corp.*,
641 B.R. 467 (Bankr. D. Del. 2022) ....................................................6–8

*In re Newstarcom Holdings, Inc.*,
608 B.R. 614 (D. Del. 2019) ...................................................................4

*In re NewStarcom Holdings, Inc.*,
816 F. App'x 675 (3d Cir. 2020) .........................................................3–4

*In re Opus E., LLC*,
528 B.R. 30 (Bankr. D. Del. 2015) .......................................................8–9

*In re Paragon Offshore PLC*,
598 B.R. 761 (Bankr. D. Del. 2019) .......................................................15

*In re Schwartz*,
2014 WL 2621114 (Bankr. D.N.J. June 12, 2014) ....................................5

*In re Sportco Holdings, Inc.*,
2021 WL 4823513 (Bankr. D. Del. Oct. 14, 2021) ...........................12–14

*In re Svetc*,
521 B.R. 892 (Bankr. W.D. Ark. 2014)...................................................14

*Territory of U.S. Virgin Islands* v. *Goldman, Sachs & Co.*,
937 A.2d 760 (Del. Ch. 2007)................................................................15

*Vichi* v. *Koninklijke Philips Elecs. N.V.*,
62 A.3d 26 (Del. Ch. 2012)...................................................................15

*Zayed* v. *Buysse*,
2012 WL 12893882 (D. Minn. Sept. 27, 2012) ......................................11

**Statutes**

11 U.S.C. § 548.............................................................................4, 10

11 U.S.C. § 550.............................................................................2, 14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

Del. Code Ann. Tit. 6, § 1304(a)(1)(A) ........................................................................10

**Other Authorities**

Amended Omnibus Complaint and Objection to Claim,
  *Autobacs Strauss, Inc.* v. *Autobacs Seven Co. Ltd.*,
  Adv. Pro. No. 09-52849 (Bankr. D. Del. Sept. 25, 2012), Dkt. No. 72................................7–8

Fed. R. Civ. P. 9.................................................................................................2, 11–13

Complaint, *In re Maxus Energy Corp.*,
  No. 18-50489 (Bankr. D. Del. June 6, 2018), Dkt. No. 1 ........................................................7

## PRELIMINARY STATEMENT[2]

Plaintiff's Complaint seeks to impose liability on a fledging nonprofit for innocently receiving funds from a third-party non-Debtor.  It does so without identifying any FTX Insider that was even aware of these Transfers, let alone how they furthered the FTX Insiders' fraudulent scheme.  The Motion showed why these claims fail as a matter of law:  (a) binding Third Circuit caselaw prohibits Plaintiff from voiding transfers made by non-Debtors; and (b) the Complaint entirely fails to allege fraudulent intent—an omission fatal to its actual fraudulent transfer claims.

Plaintiff's Opposition[3] confirms these (and other) fatal defects in the Complaint.  *First*, the Opposition argues that the Debtors have an interest in the Transfers from non-Debtor FTX Philanthropy to Defendant because those funds originated with an (unspecified) Debtor.  But the Opposition does not cite to a single case for its premise that a debtor has an unlimited ability to avoid non-debtor transfers whenever the funds transferred "originated" with a debtor.  For good reason:  absent an initial showing that a debtor has some claim to the assets first transferred to the non-debtor, a debtor has no basis to assert an interest in the subsequently transferred funds (even if those funds were purportedly once misappropriated customer assets).

The Opposition's *post hoc* assertion that the Complaint pleads an alter ego theory cannot cure this fundamental defect.  The Complaint, which does not mention "alter ego" or "veil piercing," clearly does not plead an alter ego claim, and Plaintiff of course cannot use a brief to amend its Complaint.  And even if the Complaint did raise an alter ego claim, it has not alleged facts sufficient to establish ***any*** of the factors required for such a claim.

---

[2]   Capitalized terms used but not defined in this Reply shall have the meanings ascribed to those terms in *Defendant's Amended Memorandum of Law in Support of its Motion to Dismiss the Complaint* [A.D.I 63] (the "Motion").

[3]   The "Opposition" refers to *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint* [A.D.I. 73].

*Second*, the Opposition does nothing to remedy the Complaint's wholesale failure to allege fraudulent intent.  The Opposition does not even address the Motion's primary argument that Plaintiff fails to allege that the relevant transferor entity—FTX Philanthropy—had any creditors, let alone that anyone intended to defraud those nonexistent creditors.  And, in response to the Motion's argument that Plaintiff does not allege how the ***specific Transfers*** furthered the FTX Insiders' fraudulent scheme, the Opposition simply continues to point to generic allegations that FTX Insiders (a) perpetrated fraud, and (b) made political and charitable contributions like the Transfers.  The Opposition does not provide any support for the notion that these general allegations are sufficient under Rule 9(b) of the Federal Rules of Civil Procedure.  And they are not:  the absence of basic factual allegations in the Complaint—e.g., failing to identify any FTX Insider that even knew about, let alone directed, the Transfers—requires dismissal.  Similarly, the Opposition's numerous cites to the FTX Group's generally fraudulent behavior in alleging its "badges of fraud" also fail to show that the ***Transfers*** were made with any fraudulent intent.

*Third*, because the Opposition does not adequately address any of the defects in its fraudulent transfer claims raised in the Motion, the Complaint remains legally insufficient to support a section 550(a) claim.

*Finally*, the Opposition fails to negate any of the Motion's arguments for dismissal of the unjust enrichment claim:  Plaintiff fails to allege (a) that Defendant was complicit in the Debtors' scheme or (b) that the Debtors—rather than FTX Philanthropy—directly enriched Defendant.

## **ARGUMENT**

### I.     **The Complaint Fails to Allege a Transfer of a Debtor's Interest in Property**

The Opposition does not—and cannot—remedy the basic and threshold flaw in Plaintiff's Complaint:  neither the Bankruptcy Code nor Delaware law entitles a plaintiff to avoid a transfer of non-debtor property.

**A.      The Complaint Does Not Allege Any Transfer of a Debtor's Property**

The Motion demonstrated that the Complaint is clear:  it seeks to avoid transfers from "Transferor" "FTX Philanthropy" to Defendant.  *See* Compl. ¶ 3 (listing FTX Philanthropy as "Transferor" of allegedly "avoidable" transfers); *id.* ¶¶ 38–39 (defining the "Transfers" as payments made to Defendant "through FTX Philanthropy").  FTX Philanthropy is not a Debtor (nor a party).  Accordingly, the Motion showed that Plaintiff's fraudulent transfer claims must fail, citing the host of cases from Third Circuit courts holding that neither the Bankruptcy Code nor Delaware law allows avoidance of a non-debtor transfer.  *See, e.g.*, *Crystallex Int'l Corp.* v. *Petroleos de Venez*, 879 F.3d 79, 86 (3d Cir. 2018) ("Just as. . . a non-debtor transferor is not liable under the Bankruptcy Code, a non-debtor transferor is not liable under DUFTA"); *In re NewStarcom Holdings, Inc.*, 816 F. App'x 675, 678 (3d Cir. 2020) ("Federal bankruptcy law does not impose liability for transfers of ***non-debtor*** property."); Mot. at 9–13 (citing cases).

The Opposition suggests three ways by which it can escape this binding case law.  All fail.

*First*, the Opposition argues that because the funds ultimately transferred to Defendant originated with a Debtor—i.e., a Debtor transferred those funds to FTX Philanthropy before FTX Philanthropy made the supposedly fraudulent Transfers to Defendant—the Debtors have an "interest" in the property transferred by non-Debtor FTX Philanthropy to Defendant.  *See* Opp. at 7 ("FTX Philanthropy's primary source of funds was the Debtors' assets.").  But the Opposition lacks support for its contention that a debtor has an unlimited ability to avoid transfers between two third parties simply because the funds at issue in that third-party transaction originated from a debtor.  In fact, Plaintiff's position would allow a debtor who had engaged in a perfectly legitimate transaction with a third party to unwind that third parties' dealings with its counterparties—a clearly impermissible result.

Instead, a debtor must first show it has an interest in the fraudulently transferred property. 11 U.S.C. § 548(a)(1) ("The trustee may avoid any transfer . . . of an ***interest of the debtor*** in property[.]" (emphasis added)).  Plaintiff has not shown it has ***any*** interest in the funds transferred to FTX Philanthropy—it has not alleged any fraudulent transfer from a Debtor to FTX Philanthropy or sought to unwind that first transfer on some other basis.  Plaintiff has not cited any case for the proposition that it may avoid a transfer between two non-debtor third parties in these circumstances.  In fact, *In re Newstarcom Holdings, Inc.*, 608 B.R. 614 (D. Del. 2019), cited in Opp. at 6, illustrates how courts analyze this issue:  there, the bankruptcy court properly dismissed the fraudulent transfer claims because "the only well-pleaded allegation actually describing the transfer relates to the asset transfer from ***non-Debtor*** Old Matco."  608 B.R. at 621 (emphasis added).  The Third Circuit agreed, noting that even though "another part of the transaction involved a transfer of the property of a debtor, by a debtor," the "Trustee failed to plead that part of the transaction."  *In re Newstarcom Holdings, Inc.*, 816 F. App'x at 678–79.

The claim that "all assets nominally held by FTX Philanthropy were in fact misappropriated" Debtor assets does not change this conclusion and misses the point.[4]  Opp. at 8–9.  The Debtors do not have unfettered ability to avoid transfers to which no Debtor is a party simply because those funds were once allegedly misappropriated customer funds.  If Plaintiff believes that any Debtor inappropriately transferred misappropriated assets to FTX Philanthropy, it can sue FTX Philanthropy to recover those funds, and critically, prove the elements of a fraudulent transfer (or some other) claim with respect to that transfer.  If FTX Philanthropy

---

[4]    The Opposition also relies on a procedural ruling in the bankruptcy to assert that Debtors have a "property interest in funds held in bank accounts in the name of FTX Philanthropy."  Opp. at 9.  That assertion is absent from the Complaint.  Moreover, a January 2024 order finding a Debtor entitled to the proceeds of an FDIC claim belonging to FTX Philanthropy—an order issued over a year after FTX Philanthropy "ceased operations . . . in November 2022," Compl. ¶ 33—has no bearing on whether the specific Transfers involved Debtor property.

subsequently transferred those funds elsewhere, Plaintiff may sue that transferee under the proper

legal theories.  But Plaintiff cannot, without showing that the initial transfer is voidable, sue

subsequent transferees.

*Second*, Plaintiff's statement—which is not in the Complaint[5]—that the funds were

transferred directly from Debtor accounts does not help.  The cases to which Plaintiff cites for the

proposition that money in a debtor account is estate property are inapposite as they do not involve

allegations that a ***non-debtor*** fraudulently transferred property from those debtor bank accounts.

*See* Opp. at 7 (citing *In re Schwartz*, 2014 WL 2621114 (Bankr. D.N.J. June 12, 2014), and *In re*

*FBI Wind Down, Inc*., 581 B.R. 387 (Bankr. D. Del. 2018)).  *In re Schwartz* analyzed whether

bank accounts were property of a bankruptcy estate in determining whether a debtor

inappropriately failed to disclose and turn over the bank accounts to the chapter 7 trustee managing

the estate—it has no bearing on whether a debtor ***continues to have*** an interest in those funds ***after***

they are transferred from a debtor account to a non-debtor third party.  2014 WL 2621114, at *1.

Nor does *FBI Wind Down* involve allegations that property was transferred from debtor accounts,

to a non-debtor, then to a defendant.[6]  581 B.R. at 397.  Accordingly, neither case bears on whether

a Debtor has an interest in the Transfers between non-Debtor FTX Philanthropy and Defendant.

---

[5]   The Opposition contends that Plaintiff has adequately alleged a transfer of Debtor property because the "Complaint explicitly states that the March 8 Transfer was from an FTX.com bank account."  Opp. at 7 (citing Compl. ¶ 38).  But the Complaint raises only the ambiguous allegation that the March 8 Transfer was made from "a Prime Trust—FTX account" without specifying which entity—Debtor or non-Debtor—owns that account. Compl. ¶ 38.

[6]   *FBI Wind Down* concerns whether transfers to defendants allegedly made by two debtors, TFI and TRI, constituted preferential payments.  581 B.R. at 396–97.  In that case, the fact that TFI had an interest in property transferred from its bank account to defendants was ***not disputed by either party***.  *Id.* at 400–01.  Notably, however, the court found that a separate debtor entity—TRI—"ha[d] no interest in the Transfers" because there was no evidence to show TRI "exercised any indicia of control over the funds once the Transfers left the deposit accounts" owned by TRI.  *Id.* at 401.

*Third*, despite the absence of any such allegations, the Opposition attempts to rewrite the Complaint to state that the Transfers simply "passed through a non-debtor." Opp. at 8. But the Complaint only identifies, and seeks to unwind, purportedly fraudulent transfers from FTX Philanthropy to Defendant. Compl. ¶¶ 3, 38–39. The Complaint does not allege that FTX Philanthropy was a mere conduit lacking dominion and control over funds transferred from a Debtor to Defendant—the Complaint does not even identify with any specificity any transfers made by any Debtor. Nor does Plaintiff allege that any Debtor directly transferred any funds to Defendant. Accordingly, the Court should reject this belated attempt to rewrite its Complaint. *See Handal* v. *Innovative Indus. Props., Inc.*, __ F.4th __, 2025 WL 2922871, at *3 n.4 (3d Cir. Oct. 15, 2025) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Pennsylvania ex rel. Zimmerman* v. *PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988))).

The Opposition's citation to *In re Maxus Energy Corp.*, 641 B.R. 467 (Bankr. D. Del. 2022), as supposed support for the contention that a debtor has "standing to recover its own fraudulently transferred property if it passed through a non-debtor," Opp. at 8, also does not help. In *Maxus*, a defendant, Repsol, argued that, because the debtor, Maxus, transferred assets to a non-debtor, YPFI, before the assets were transferred to Repsol, the plaintiff failed to allege a transfer of debtor property, since "YPFI—not Maxus—owned the assets." 641 B.R. at 493–94, 559. The *Maxus* court disagreed, reasoning that "the Trust alleges that YPFI is the alter-ego of Maxus. . . . If YPFI and Maxus are found to be a single economic unit, then such assets would be transfers by the Debtors."[7] *Id.* at 560. Contrary to Plaintiff's reading, *Maxus* does not stand for the proposition

---

[7] The *Maxus* court also noted that the transfers involved "initial and subsequent transfers." 641 B.R. at 560. Here, Plaintiff has not alleged that Defendant is a subsequent transferee of a supposedly fraudulent initial transfer from a Debtor to FTX Philanthropy—it has not even identified any particular transfers made from any Debtor to FTX Philanthropy.

that a debtor may unwind a transfer that "passed through" a non-debtor—*Maxus* says only that, when a transfer is made by a non-debtor, a plaintiff needs to allege **some other theory** by which the transfer involved an "interest of the debtor in property." As discussed below, Plaintiff wholly fails to do so.

### B.        The Complaint Does Not Allege Any Alter Ego Basis for Liability

The Court should also reject Plaintiff's attempt to belatedly amend the Complaint to raise an alter ego theory to show the Debtors were responsible for FTX Philanthropy's Transfers. Opp. at 9–11. The Complaint never mentions an alter ego theory, and even if it did, its allegations are plainly insufficient to plead an alter ego claim.[8]

*First,* Plaintiff's Opposition states that the Complaint "alleges facts sufficient to plausibly demonstrate that FTX Philanthropy operated as an alter ego of the Debtors." Opp. at 11. But the Complaint does not use the words "alter ego," "veil piercing," or any other term indicating that it is asking the Court for the extraordinary relief of disregarding FTX Philanthropy's corporate independence from the Debtors. Plaintiff's own cited cases make clear that this is insufficient to plead an alter ego theory: in the cases raised to support Plaintiff's "alter ego" theory, the plaintiffs brought separate **claims** alleging alter ego liability **in their complaints**. *See* Complaint ¶¶ 212–232, *In re Maxus Energy Corp.*, No. 18-50489 (Bankr. D. Del. June 6, 2018), Dkt. No. 1 (alleging "Veil Piercing/Alter Ego Liability" as "Count I" and requesting "a judgment declaring that the Defendants are the alter egos of Maxus and Tierra"); Amended Omnibus Complaint and Objection to Claim at 84–86, 119, *Autobacs Strauss, Inc.* v. *Autobacs Seven Co. Ltd.*, Adv. Pro. No. 09-52849 (Bankr. D. Del. Sept. 25, 2012), Dkt. No. 72 (alleging "Alter Ego/Piercing the Corporate

---

[8]    While the Court need not reach this issue given the Complaint's failure to invoke or adequately allege an alter ego theory, Defendant reserves all rights with respect to Plaintiff's offensive use of the alter ego theory—an equitable remedy—to hold an innocent third-party transferee liable—a wholly inequitable result.

Veil" as "Count One" and requesting "judgment piercing the corporate veil"); *In re Opus E., LLC*, 528 B.R. 30, 57 (Bankr. D. Del. 2015) ("The Trustee asserts an alter ego claim seeking to pierce the corporate veil of LLC and the Trusts"); *Mason* v. *Network of Wilmington, Inc.*, 2005 WL 1653954, at *6 (Del. Ch. July 1, 2005) (granting summary judgment "on the piercing the corporate veil claim (Count II of the Complaint)"). The Complaint does not allege any alter ego claim or theory, and the Court should reject this belated attempt to amend its Complaint through the Opposition. *See Carber* v. *Manor Care of Wilmington DE, LLC*, 2024 WL 4333011, at *4 (D. Del. Sept. 27, 2024) (dismissing claims because the complaint "stops short of alleging on what basis it should be held . . . liable" and "[t]o the extent the Plaintiff argues such theories in the answering brief, it is well settled that a pleading cannot be amended through arguments in a brief").

Even if the Complaint did allege an alter ego theory (which it does not), it has not alleged sufficient facts to plausibly plead that theory. Once more, as Plaintiff's own cases demonstrate, the Complaint must plead facts showing that the ***particular*** entity it claims is an alter ego operated as a single economic unit with its dominant shareholder. *See United States* v. *Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988) ("An alter ego analysis must start with an examination of factors which reveal how the corporation operates and the ***particular defendant's*** relationship to that operation." (emphasis added) (cited in *Mason*, 2005 WL 1653954, at *3 & n.23)).

Plaintiff fails to sufficiently plead ***any*** of the five factors the Opposition identifies as relevant to "whether a parent and subsidiary operated as a single economic entity," Opp. at 9—let alone the combination required to survive a motion to dismiss. *See In re Maxus Energy Corp.*, 641 B.R. at 551 ("A court's decision to disregard the corporate entity results from a combination of these facts, not merely one.").

- **Whether the subsidiary was undercapitalized**. The Complaint does not allege that FTX Philanthropy was undercapitalized—in fact, it alleges that that the "FTX Group would contribute at least 1% of its fees to [FTX Philanthropy]." Compl. ¶ 32.

- **Whether the companies failed to observe corporate formalities**. The Complaint does not contain a single allegation about whether corporate formalities were observed between FTX Philanthropy and the Debtors. *See In re Autobacs Strauss, Inc.*, 473 B.R. 525, 556–57 (Bankr. D. Del. 2012) (alter ego claim survived dismissal on allegations parent made decisions for subsidiary without consulting subsidiary's board; subsidiary's board did not meet or memorialize corporate decision making—violating its by-laws; and subsidiary's officers were excluded from material operational, strategic, and financial decisions affecting it).

- **Whether there was siphoning of the subsidiary's funds by the dominant shareholder**. The Complaint does not allege that any Debtor "siphoned" FTX Philanthropy's funds—in fact, the Complaint alleges the opposite: that FTX Philanthropy was fully funded ***by the Debtors***. Compl. ¶¶ 32, 41.

- **Whether separate corporate records were maintained**. The sole, generic allegation of the "FTX Group's lack of controls and recordkeeping," Compl. ¶ 24, says nothing about ***FTX Philanthropy's*** failure to maintain its books and records,[9] and is therefore insufficient. *See In re Opus E.*, 528 B.R. at 63 ("Because the Debtor observed corporate formalities and maintained its own independent books and records . . . this factor does not favor piercing the corporate veil."); *In re Autobacs Strauss, Inc.*, 473 B.R. at 558 (alter ego claim survived dismissal on allegations that subsidiary's board did not meet, execute resolutions, vote, or keep minutes with respect to any corporate decision making).

- **Whether the subsidiary was a façade for the operations of the dominant stockholder**. Nowhere does the Complaint identify any FTX Insider that directed the specific Transfers, let alone used them as a façade for the FTX Group's fraudulent operations. Indeed, the Complaint does not allege that these Transfers had any relevance to the FTX Group's fraud or were anything but bona fide charitable donations that FTX Philanthropy independently made to advance its philanthropic mission. Compl. ¶¶ 32, 34 (describing mission of FTX Philanthropy, noting that a "significant portion of [its] giving went toward think tanks or groups researching artificial intelligence," and alleging Defendant is a "nonprofit corporation dedicated to building AI decision-making tools for human utilization"); *see also In re Opus E.*, 528 B.R. at 60 (declining to apply alter ego to debtor-subsidiary given no showing that it "was created only as a façade . . . . Rather the Court finds that the Debtor was created for a legitimate business purpose and acted independently . . . .").

The Complaint does not plead any of the factors Third Circuit courts look to in an alter ego analysis, and the Court should reject Plaintiff's improper attempt to amend the Complaint.

---

[9] The Complaint does not even allege that FTX Philanthropy is a member of the "FTX Group." Compl. ¶ 11 n.2.

## II.     The Complaint Does Not Allege Actual Fraudulent Transfer

The Motion raised three deficiencies in the Complaint that are dispositive of Plaintiff's actual fraudulent transfer claims:  (1) the Complaint does not allege any intent to defraud creditors of FTX Philanthropy; (2) Plaintiff's generic allegations of intent to defraud creditors of the FTX Group fail to connect the fraud perpetrated by FTX Insiders to the Transfers; and (3) Plaintiff's conclusorily alleged "badges of fraud" are insufficient to raise an inference of fraudulent intent. The Opposition does not adequately address any of these fundamental defects.

### A.     The Complaint Does Not Allege Intent to Defraud FTX Philanthropy's Creditors

The Motion argued that Plaintiff's actual fraudulent transfer claims must fail because the Complaint fails to plead any "actual intent to hinder, delay, or defraud" creditors of the transferor, FTX Philanthropy, as mandated by 11 U.S.C. § 548(a)(1)(A) and Del. Code Ann. Tit. 6, § 1304(a)(1)(A).  Mot. at 15 (citing *In re HH Liquidation, LLC*, 590 B.R. 211, 265 (Bankr. D. Del. 2018) ("Section 548 limits claims for fraudulent transfer to transfers that harm the transferor's creditors, not the creditors of some other entity.").  The Opposition does not even address, let alone seek to refute, this argument.  Nor could it:  Plaintiff does not even allege that FTX Philanthropy had any creditors.  Moreover, to the extent Plaintiff suggests that its allegations of intent to defraud "FTX Group creditors" sufficiently encompasses an intent to defraud creditors of FTX Philanthropy, Compl. ¶ 41, this argument also fails—Plaintiff does not allege that FTX Philanthropy is a member of the FTX Group, *id.* ¶ 11 n.2 (defining "FTX Group" as "comprised of four silos," without identifying FTX Philanthropy as within those "silos").

### B.     The Complaint Fails to Allege Intent to Defraud Even FTX Group Creditors

The Motion also showed that Plaintiff fails to plead fraudulent intent because it does not— as it must—connect the specific Transfers to the FTX Insiders' fraud or otherwise make any

particularized allegations of fraudulent intent.  Mot. at 15–18.  The Opposition does nothing to address this defect.

*First*, rather than identify any allegation in the Complaint demonstrating how the Transfers at issue advanced the FTX Insiders' fraud, the Opposition points generally to the FTX Insiders' fraudulent activities, arguing that, because the funds transferred to Defendant were "illegally siphoned from the FTX Exchanges," the Transfers "necessarily only resulted from the fraudulent acts of the FTX Insiders," and thus were presumably made with intent to defraud.  Opp. at 13.

Critically, the Opposition does not identify a single case indicating that it is sufficient to merely allege a fraudulent scheme and transfers made by participants in that scheme.  In fact, the case law is clear that the "proper focus of a fraudulent transfer inquiry is on the transfer itself" and how it advanced the fraudulent scheme, not on "the overall business practices of the Debtor."  *In re Carrozzella & Richardson*, 286 B.R. 480, 490 (D. Conn. 2002); *accord In re FTX Trading Ltd.*, 2024 WL 4562675, at *8 (Bankr. D. Del. Oct. 23, 2024) (requiring focus on "how exactly the allegedly fraudulent transfers further the fraudulent scheme"); *Zayed* v. *Buysse*, 2012 WL 12893882, at *17 (D. Minn. Sept. 27, 2012) ("[A plaintiff] must show that each transfer was made in furtherance of the . . . scheme" because that "a debtor conducts its business fraudulently does not make every single payment by the debtor subject to avoidance.") (citation modified).

The Opposition posits that FTX Philanthropy's charitable donations were "intentionally designed to prolong the FTX Insiders' fraudulent scheme by burnishing the FTX Group's reputation" and acting as "additional smoke and another mirror to hide behind."  Opp. at 2, 13.  But the Complaint fails to allege with any specificity, let alone that required by Federal Rule of Civil Procedure 9(b), essential facts about how the Transfers furthered the FTX Insiders' fraudulent scheme.  There are no allegations, for example, identifying:  (1) any FTX Insider that

was even aware of (let alone directed) the Transfers; (2) how the particular Transfers secured any reputational benefits for any FTX Insider; or (3) how these specific Transfers bolstered the image of the FTX Group (for example, if any individual or entity invested with FTX as a result of the Transfers).[10]

*Drivetrain, LLC* v. *X. Com., Inc.*, 2023 WL 1804627 (Bankr. D. Del. Feb. 7, 2023), cited in Opp. at 14, illustrates why the Complaint's allegations are insufficient. There, it was alleged that the debtor's founder entered into a contract with a third-party to whom he would furnish falsified revenue reports that he would then use as "'proof' that the debtor was a successful business to attract additional investors," "trick[ing] [them] into believing that the company was both successful enough to afford [the third party's] services and was generating significant revenue from those services." 2023 WL 1804627, at *1, 3. Accordingly, unlike Plaintiff, the *Drivetrain* plaintiff—which sought to void payments made to the third-party contractor—specifically alleged and explained how those third-party payments directly propped up the fraudulent scheme.

*Second*, Plaintiff asserts that it has alleged fraudulent intent because the "FTX Insiders knew that the natural consequence of their 'charitable' contributions—including the Transfers— would be to deprive FTX Group creditors of their assets." Opp. at 14. But, other than alleging that the FTX Insiders generally controlled FTX Philanthropy (Compl. ¶ 10), there is no specific allegation—as Rule 9(b) requires—of who authorized, knew of, or was otherwise involved in the Transfers, and therefore no allegation that any specific FTX Insider was aware of the "natural consequence" that the Transfers would inhibit creditor recoveries.[11] *See In re Sportco Holdings,*

---

[10]    This lack of specificity distinguishes the other cases on which Plaintiff relies. *In re Live Well Fin., Inc.*, 652 B.R. 699, 705–06 (Bankr. D. Del. 2023), cited in Opp. at 16 (finding transfers made with requisite fraudulent intent on detailed allegations that the payments were necessary to maintain and conceal the fraudulent scheme); *In re Manhattan Inv. Fund Ltd.*, 397 B.R. 1, 13 (S.D.N.Y. 2007), cited in Opp. at 16 (same).

[11]    The Complaint notes that "donations of $2 million or more required approval by Bankman-Fried," but does not describe how smaller donations like the Transfers would have been authorized. Compl. ¶ 33.

*Inc.*, 2021 WL 4823513, at *14 (Bankr. D. Del. Oct. 14, 2021) ("Rule 9(b) requires plaintiffs to plead the 'who, what, where, when, how, and why' of a fraudulent transfer claim.").

### C.    Plaintiff's Badges of Fraud Fail to Raise an Inference of Fraudulent Intent

The Opposition also does not cure the Complaint's defective "badges of fraud."[12]

*Concealment of the Transfers and Assets.*   Conceding that neither the Transfers nor any Debtor's assets were concealed, Plaintiff urges that it suffices as a badge of fraud that FTX Insiders "actively concealed the nature of the Transfers" by obfuscating the source of the funds contributed to FTX Philanthropy—i.e., that they were "unlawfully misappropriat[ed]" assets.  Opp. at 17; *see also* Compl. ¶ 42(i) (alleging concealment of the "source of the assets ultimately transferred to Defendant, the purpose of the transfers, and the fraudulent scheme pursuant to which the Transfers were made").   But concealing the Transfers' "nature" is not enough, even assuming the FTX Insiders who controlled FTX Philanthropy were responsible for doing so.   *Compare In re Mallinckrodt PLC*, 2024 WL 206682, at *32 (Bankr. D. Del. Jan. 18, 2024) (concealment badge not present where the transfer was "publicly announced" but its "fraudulent nature . . . was concealed"), *with In re BYJU's Alpha, Inc.*, 2025 WL 665294, at *14 (Bankr. D. Del. Feb. 27, 2025) (badge present where "[t]he fact of the transfer itself was concealed").

*Insolvency and Inadequate Value.*   Despite devoting paragraphs to arguing that "the Debtors" were insolvent at the time of the Transfers, the Opposition's sole response to the Motion's argument that Plaintiff must allege that ***FTX Philanthropy*** was insolvent is that FTX Philanthropy's alleged dependence on the Debtors raises a "strong inference that FTX Philanthropy owed debts to the FTX Group's creditors as a result of its participation in the FTX

---

[12]    Plaintiff also asks that the Court consider "other factors," Opp. at 15, but those other factors are mere restatements of arguments raised earlier in its Opposition—i.e., those disposed of in Section II.B of this Reply.

Group's fraudulent scheme."  Opp. at 19–20.  But there can be no such inference that FTX Philanthropy owed any debts because, as discussed, Plaintiff does not allege either:  (1) that FTX Philanthropy had any creditors (and thus any debt); or (2) that it received fraudulent or otherwise improper transfers from the Debtors (defeating any "strong inference" of debts owed to the Debtors).  And even if it did, the Opposition does not meaningfully contest the Motion's showing that fraudulent intent is not pleaded merely on allegations of insolvency and lack of reasonably equivalent value.  *E.g.*, *In re J & M Sales Inc.*, 2021 WL 12360932, at *22 (Bankr. D. Del. Aug. 20, 2021) ("[I]nadequate consideration" and debtors' insolvency "are insufficient to support a claim for actual fraudulent conveyance" even when "coupled" with an argument that the transfer's "natural consequences" would hinder creditors).

       *Existence and Timing of Substantial Debts*.  The Motion demonstrated that the Complaint fails to allege either:  (1) that FTX Philanthropy incurred any debt; or (2) any specific debt that FTX Group incurred or when it did so, even if those debts were relevant (they are not).  The Opposition's response—which once again asks the Court to infer that FTX Philanthropy incurred substantial debts simply by pleading that the Debtors were engaged in fraud (Opp. at 20)—comes nowhere close to satisfying Plaintiff's pleading burden.  *See In re Svetc*, 521 B.R. 892, 905 (Bankr. W.D. Ark. 2014) (finding fraudulent intent, noting "close temporal proximity" between transfer and debtor incurring substantial debts); *In re Sportco Holdings, Inc.*, 2021 WL 4823513, at *14.

## III.    The Complaint Fails to Plead a Claim Under Section 550(a)

       Plaintiff concedes that its section 550(a) claim is "contingent" on its fraudulent transfer claims, yet urges that the claim not be dismissed because it adequately pleaded fraudulent transfers.  Opp. at 21.  For the foregoing reasons, however, the Complaint has failed to plausibly plead any fraudulent transfer claim and, therefore, the Court should dismiss the section 550(a) claim.

**IV.     The Complaint Fails to State an Unjust Enrichment Claim**

Finally, the Motion showed that Plaintiff's unjust enrichment claim also fails because it does not allege:  (1) a direct relationship between Plaintiff's impoverishment and Defendant's enrichment; or (2) that Defendant was "aligned" with the wrongful conduct.  Mot. at 21–23.  The Opposition parrots the elements of this claim without meaningfully addressing either argument.

*First*, Plaintiff has failed to show a "direct relationship" between Defendant's enrichment and Plaintiff's impoverishment, because Defendant was enriched (if at all) by FTX Philanthropy, not Plaintiff.  Mot. at 23 (citing cases).  The Opposition's recitation that the "Debtors' contribution to Defendant" is sufficient, Opp. at 22, wholly fails to grapple with the argument that the enrichment must be ***direct***—i.e., Defendant "was enriched unjustly by [Plaintiff] who acted for [its] benefit."  *E.g.*, *Vichi* v. *Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 60 (Del. Ch. 2012) (citation modified) (dismissing unjust enrichment claim lacking allegation that ***plaintiff*** enriched defendant).

*Second*, Plaintiff—which does not allege that Defendant is anything other than an innocent beneficiary of the Transfers—fails to allege an "absence of justification" (i.e., some "wrongdoing or mistake at the time of the transfer," such as sufficient alignment between Defendant and the "wrongdoer").  *Territory of U.S. Virgin Islands* v. *Goldman, Sachs & Co.*, 937 A.2d 760, 796 n.161 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008); *see also id.* ("[A] passive stockholder who receives a dividend in good faith has not been unjustly enriched").  Although the Opposition urges that allegations of insolvency and lack of equivalent value are sufficient, Opp. at 22, if this were true, any instance of constructive fraudulent transfer would invariably support an unjust enrichment claim, improperly blurring the distinction between them.  *Cf. In re Paragon Offshore PLC*, 598 B.R. 761, 768 (Bankr. D. Del. 2019) ("[S]tate law unjust enrichment actions are distinct from fraudulent transfer actions under the Bankruptcy Code.").

## **CONCLUSION**

For these reasons and those set forth in the Motion, the Court should dismiss the Complaint with prejudice.

Dated: November 10, 2025
Wilmington, Delaware

Respectfully submitted,

**PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP**

*/s/ Daniel A. Mason*
Daniel A. Mason (Del. Bar No. 5206)
1313 North Market Street
Suite 806
Wilmington, DE 19801
Telephone: (302) 655-4410
Fax: (302) 397-2710
Email: dmason@paulweiss.com

William A. Clareman (admitted pro hac vice)
Vida J. Robinson (admitted pro hac vice)
1285 Avenue of the Americas
New York, New York 10019-6064
Telephone: (212) 373-3000
E-mail:  wclareman@paulweiss.com
          virobinson@paulweiss.com

*Counsel for Defendant The Goodly Institute*