**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| FTX TRADING LTD., *et al.*, | ) | Case No. 22-11068 (KBO) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |
|  | ) |  |
| FTX RECOVERY TRUST, | ) |  |
|  | ) | Adv. Proc. 24-50212 (KBO) |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | **Related to Adv. D.I. 62** |
|  | ) |  |
| THE GOODLY INSTITUTE dba GOODLY LABS, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**MEMORANDUM ORDER REGARDING**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

Upon consideration of the *Defendant's Motion to Dismiss the Complaint* (the "Motion to Dismiss")[1] and all briefing in support of and in opposition to the Motion to Dismiss, the Court hereby finds and concludes the following:

## I.    PROCEDURAL HISTORY

This adversary proceeding arises from the November 2022 chapter 11 cases of FTX Trading Ltd. ("FTX") and its affiliated debtors (each, a "Debtor" and collectively, the "Debtors"). On November 8, 2024, Debtors FTX, Alameda Research Ltd. ("Alameda"), West Realm Shires, Inc., and West Realm Shires Services, Inc. filed the *Complaint for Avoidance and Recovery of Transfers and Obligations Pursuant to 11 U.S.C. §§ 105, 544, 548, and 550 and Del. Code Ann. Tit. 6, §§ 1304 and 1305* (the "Complaint")[2] against The Goodly Institute d/b/a Goodly Labs ("Goodly").  Following the effective date of the Debtors' confirmed plan of reorganization,[3] the FTX Recovery Trust (the "Trust") assumed responsibility for this action.

---

[1] Adv. D.I. 62.

[2] Adv. D.I. 1 (the "Compl.").

[3] Case No. 22-11068, D.I. 26404, Ex. 1 (*Second Amended Joint Chapter 11 Plan of Reorganization of FTX Trading Ltd. and Its Debtor Affiliates*).

Goodly seeks dismissal of the Complaint, arguing that the Trust fails to state its claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  Briefing is complete.[4] Goodly requests oral argument, but I do not believe that it will aid my consideration of the matters presented.  Accordingly, the Motion to Dismiss is ripe for adjudication.

## II.    SUMMARY OF TRUST'S ALLEGED FACTS

The Debtors are part of a group of companies known as the FTX Group.  The FTX Group operated cryptocurrency exchanges and trading businesses, including the digital asset trading exchange FTX.com.[5]  The Debtors' chapter 11 cases were precipitated by FTX Group's severe liquidity crisis arising from a massive fraud perpetrated by a small group of insiders that included Samuel Bankman-Fried (collectively, the "FTX Insiders").[6]  As has been widely reported, the FTX Insiders misappropriated customer deposits on the FTX exchanges for use on private homes and jets, political and charitable contributions, and investments.[7]  To do so, Debtor Alameda and its Debtor-subsidiary Alameda Research LLC were given unfettered use of customer assets on the FTX.com exchange.[8]  As the looting grew, so did the hole on the exchange.[9]  To fill it, the FTX Insiders needed to "grow the company[.]"[10]  One growth strategy was for Alameda to borrow money from third parties for investment.[11]

FTX Philanthropy ("FTXP"), formerly known as FTX Foundation, Inc., was a non-debtor affiliated entity that was an integrated part of the FTX Group.[12]  FTXP's sole member was Bankman-Fried, and its directors included the FTX Insiders and FTXP's Chief Executive Officer.[13]  It was a non-profit corporation that claimed it "'work[ed] to save lives, prevent suffering and help build a flourishing  future.'"[14]  Its charity causes included effective altruism and think tanks or groups researching artificial intelligence or advocating public policy positions.[15]  FTXP's donations improved the FTX Insiders' public image and reputation while the fraud was ongoing.[16]

---

[4] Adv. D.I. 63, 64, 73, 81.

[5] Compl. ¶¶ 5, 23.

[6] *See, e.g.*, Compl. ¶¶ 11-15, 23-31.  The FTX Insiders are Bankman-Fried, Caroline Ellison, Nishad Singh, and Zixiao "Gary" Wang.  *Id.* ¶ 15.

[7] *Id.* ¶ 24.

[8] *Id.* ¶¶ 26-30.

[9] *Id.*

[10] *Id.* ¶ 29 (internal quotations omitted)

[11] *Id.* ¶ 30.

[12] *Id.* ¶¶ 10, 32.

[13] *Id.* ¶ 10.

[14] *Id.* ¶ 32 (quoting FTXP's website).

[15] *Id.*

[16] *Id.* ¶¶ 33, 41.

FTXP was funded primarily by assets belonging to certain Debtors.[17]   While Bankman-Fried publicly announced that the FTX Group would contribute at least 1% of its fees to FTXP, its primary source of funds was Alameda money that had been commingled with FTX customer deposits.[18]   FTXP ceased operations when FTX collapsed in November 2022.[19]

Prior to the chapter 11 cases, FTXP made two transfers (the "Transfers") to Goodly, a 501(c)(3) nonprofit corporation focused on artificial intelligence.[20]   The first transfer occurred on March 8, 2022 in the amount of $500,000.  The second occurred on October 17, 2022 in the amount of $185,000.[21]   The Trust seeks to avoid and recover these Transfers from Goodly as fraudulent transfers made by the Debtors.  Alternatively, the Trust seeks damages for unjust enrichment.

## III.   DISCUSSION

When reviewing a motion to dismiss under Federal Rule 12(b)(6) challenging the sufficiency of a plaintiff's statement of claim, a court must accept all factual allegations as true, construe such facts in the light most favorable to the plaintiff, and determine whether they allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.[22]

### A.   The Fraudulent Transfer Claims (Counts 1-5)

Counts 1 and 2 of the Complaint seek to avoid the Transfers as actual and constructive fraudulent transfers under sections 548(a)(1)(A) and (B) of the Bankruptcy Code.  Counts 3 and 4 seek to avoid them as actual and constructive fraudulent transfers under sections 1304(a)(1) and (2) of Delaware's Uniform Fraudulent Transfer Act ("DUFTA")[23] and section 544 of the Bankruptcy Code.  Count 5 seeks to utilize section 550(a) of the Bankruptcy Code to recover the Transfers once avoided under the previous counts.

To avoid the Transfers as fraudulent transfers, the Trust must show that the Debtors had an interest in the property transferred.[24]   For avoidance purposes, "'property of the debtor'" is best understood as that property that would have been part of the estate had it not been transferred

---

[17] *Id.* ¶ 32.

[18] *Id.*

[19] *Id.* ¶ 33.

[20] *Id.* ¶ 34.

[21] *Id.* ¶¶ 38-39.

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Crystallex Int'l Corp. v Petróleos De Venezuela, S.A.*, 879 F.3d 79, 83 n.6 (3d Cir. 2018) (quoting *F.T.C. v. Wyndham Worldwide Corp.*, 799 F.3d 236, 242 (3d Cir. 2015)).

[23] 6 Del. C. §§ 1301-1312 (2026).

[24] 11 U.S.C. § 548(a)(1) (2026) ("The trustee may avoid any transfer . . . of an interest of the debtor in property . . . ."); *id.* § 544(a) (2026) ("The trustee . . . may avoid any transfer of property of the debtor . . . ."); *see also Crystallex*, 879 F.3d at 86 ("The relevant DUFTA and Bankruptcy Code provisions are nearly identical, and Delaware courts have interpreted and applied them uniformly.").

3

before the commencement of bankruptcy proceedings."[25]  Section 541(a) of the Bankruptcy Code broadly defines "property of the estate" as "all legal and equitable interests of the debtor in property as of the commencement of the case" "wherever located and by whomever held[.]"

Goodly argues that the Trust fails to allege the Debtors had an interest in the Transfers because the Complaint identifies non-debtor FTXP as the "Transferor"[26] and states that the Transfers were made to Goodly from funds held by FTXP.[27]  The Trust disagrees, arguing that the Complaint sets forth sufficient facts to conclude that the Debtors' property was transferred because the Transfers were made directly from a Debtor bank account or funded entirely with estate property by an entity controlled by the FTX Insiders.  Alternatively, the Trust argues that the Complaint's allegations support the conclusion that FTXP was an alter ego of the Debtors such that any asset transferred by FTXP would be a transfer by the Debtors.[28]

After reviewing the Complaint, the Court agrees that it contains adequate facts to support the Trust's contention that the Debtors had an interest in the property transferred to Goodly and that FTXP was an alter ego of the Debtors.  To start, the Complaint alleges, and public reports support, that the FTX Group, of which FTXP is alleged to be an integrated part, lacked controls and recordkeeping, which resulted in the commingling and fraudulent misuse of the Debtors' customer deposits and corporate funds by the FTX Insiders.[29]  It further alleges that the FTX Insiders controlled both the Debtors and FTXP, funded FTXP primarily through fraudulently obtained commingled customer deposits, and used FTXP to make donations of such funds to their charitable causes.[30]  When the Debtors collapsed, FTXP ceased operations too.[31]  With respect to each of the Transfers, the Complaint alleges that, at the direction of the FTX Insiders, the funds

---

[25] *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

[26] Compl. ¶ 3.

[27] *Id.* ¶ 40.

[28] Goodly argues that the Complaint never mentions that FTXP was an "alter ego" of the Debtors.  However, that legal theory can be reasonably inferred from the allegations of the Complaint, and Goodly did just that when it anticipated and addressed the Trust's alter ego theory in its opening briefing in support of the Motion to Dismiss.  *See* Adv. D.I. 63 at 11.

Goodly also reserves all rights with respect to the Trust's offensive use of the alter ego theory, which Goodly describes as an equitable remedy.  Accordingly, the Court assumes for purposes of ruling on the Motion to Dismiss that an alter ego theory may be used by the Trust to establish the estates' property interest in the funds transferred.  This theory is not without legal support.  *See, e.g.*, *In re Kwok*, Adv. No. 24-05060, 2025 WL 2163900, at *14 (Bankr. D. Conn. July 29, 2025) ("[T]he Court concludes a bankruptcy trustee may seek to avoid transfers by a debtor through an alter ego of the debtor or an entity beneficially owned by the debtor of property nominally owned by the alter ego or beneficially owned by the debtor.").

[29] Compl. ¶¶ 23-32; *see also* Case No. 22-11068, D.I. 1242, Ex. A (*First Interim Report of John J. Ray III to the Independent Directors on Control Failures at the FTX Exchanges*), *id.*, D.I. 1704, Ex. A (*Second Interim Report of John J. Ray III to the Independent Directors:  The Commingling and Misuse of Customer Deposits at FTX.com*).

[30] Compl. ¶¶ 10-15, 33.

[31] *Id.* ¶ 33.

4

left the Debtors and flowed through FTXP to Goodly on the same day.[32]  I find that these collective facts support the Complaint's allegation that "[t]he Transfers were a single integrated transaction whereby funds that were property of the Debtors were transferred to [Goodly]."[33]

It is true, as Goodly highlights, that the Third Circuit in *Miller v. Matco Electric Corp. (In re NewStarcom Holdings Inc.)* concluded that "[f]raudulent transfer liability under DUFTA does not attach to a transfer by a non-debtor."[34]  And that "[b]y extension, federal bankruptcy law does not impose liability for transfers of non-debtor property."[35]  But *NewStarcom* and the other cases on which Goodly relies are distinguishable.  In each one, unlike this case, the court found that the complaint lacked facts to infer debtor-assets were transferred.[36]

Goodly next argues that the Trust fails to state its actual fraudulent transfer claims because the Complaint does not sufficiently support its conclusions that the Transfers were made with the intent to "hinder, delay, or defraud" creditors as required by 11 U.S.C. § 548(a)(1) and 6 Del. C. §

---

[32] *Id.* ¶¶ 38-40.  It is unclear whether the March 8, 2022 transfer was made directly to Goodly from a Debtor's bank account as the Trust argues in its briefing.  Paragraph 38 of the Complaint states that this Transfer came from a "Prime Trust – FTX account" but it does not identify the account holder.  *Id.* ¶ 38.  Moreover, a reading of the entire paragraph contradicts the Trust's contention.  *See id.* ¶ 38 ("On March 8, 2022, the FTX Insiders, **through FTX Philanthropy**, caused Plaintiffs to transfer $500,000.00 from a Prime Trust – FTX account to Nicholas Brigham Adams into an account held on behalf of [Goodly].") (emphasis added); *see also id.* ¶ 40 ("The Transfers to [Goodly], which was [sic] funded by commingled customer assets, was [sic] initiated by FTX Insiders via transfers from Debtor accounts **to FTX Philanthropy** before being subsequently wired to an account held by Defendant [Goodly]." (emphasis added)).

[33] Compl. ¶ 40.  *See Maxus Liquidating Tr. v. YPF S.A. (In re Maxus Energy Corp.)*, 641 B.R. 467, 560 & n.351 (Bankr. D. Del. 2022) (concluding material disputed facts existed as to whether the subject transfers were debtor property when they flowed initially between a debtor and its alleged non-debtor alter ego and subsequently to the defendants); *see also Kartzman v. Schwartz (In re Schwartz)*, Adv. No. 12-01344, 2014 WL 2621114, at **3-5 (Bankr. D.N.J. June 12, 2014) (finding funds held in non-debtor bank accounts to be property of the estate because debtor funded and controlled the accounts for his own use); *In re NJ Affordable Homes Corp.*, No. 05-60442, 2006 WL 2128624, at *8 (Bankr. D.N.J. June 29, 2006) (finding that the unique facts and circumstances of the debtor's fraud supported the conclusion that the debtor had an equitable interest in property titled in the name of non-debtors).

[34] 816 Fed. App'x 675, 678 (3d Cir. 2020).

[35] *Id.*

[36] *See id.* at 678-79 (affirming lower court conclusions that the plaintiff failed to plead sufficient facts to explain how defendants' purchase of non-debtor subsidiary assets involved a transfer of debtor property); *Crystallex*, 879 F.3d at 86 (finding no allegations that transferor-subsidiary was an alter ego of the debtor or any other basis to disregard transferor's "distinct corporate identity and attribute to it the actions of the debtor."); *Brandt v. B.A. Cap. Co. LP (In re Plassein Int'l Corp.)*, 366 B.R. 318, 326 (Bankr. D. Del. 2007) (explaining that there were no facts to collapse non-debtor transfers with the debtor's independent transfers), *aff'd*, 388 B.R. 46, 49 (D. Del. 2008) (noting that there was no allegation in the complaint that the debtor and the transferor were "one in the same"), *aff'd*, 590 F.3d 252 (3d Cir. 2009); *Spring Real Estate, LLC v. Echo/RT Holdings, LLC*, No. 7994, 2016 WL 769586, at *3 (Del. Ch. Feb. 18, 2016) (finding that the parent company did not adequately allege that the subsidiary-transferor was its alter ego or that there was any other reason to disregard the separate corporate structures), *aff'd sub nom.*, *Klauder v. Echo/RT Holdings, LLC*, No. 133, 2016, 2016 WL 718917 (Del. Dec. 12, 2016).

5

1304(a)(1). "Transfers made in furtherance of a larger scheme to defraud may support an inference of fraudulent intent, but only where the allegations of the complaint connect the specific transfers to the scheme. In other words, the complaint must explain how exactly the allegedly fraudulent transfers further the fraudulent scheme."[37] According to Goodly, the Complaint fails to meaningfully connect the Transfers to the fraudulent activities perpetuated by the FTX Insiders.[38] I do not agree.

The Complaint alleges that the Transfers, like all of the donations made by FTXP, were made by the FTX Insiders from the Debtors' misappropriated property to bolster their public images and reputations.[39] Although not explicitly stated in the Complaint, it is not difficult to understand how a positive public image garnered from the collective charitable donations of the FTX Group and the FTX Insiders helped to obfuscate the ongoing fraud and encourage continued third party investments and business dealings.[40] These, in turn, helped grow the business, which was Bankman-Fried's alleged plan to fill the hole in the Debtors' balance sheet from the looting.[41] I believe that these allegations are sufficient connect the Transfers to the fraud and state a claim for actual intent to defraud.[42] While charitable contributions could serve a legitimate business purpose, the Complaint does not allege any facts that would support the conclusion that the Transfers to Goodly did.[43]

Goodly argues lastly that the Trust has failed to state a claim under section 550(a) because the fraudulent transfer claims must be dismissed for the reasons just addressed and rejected. Because the fraudulent transfer claims will remain, so will the section 550(a) claim.

---

[37] *Giles v. Rocket Internet Cap. Partners II SCS (In re FTX Trading Ltd.)*, Adv. No. 23-50380, 2024 WL 4562675, at *8 (Bankr. D. Del. Oct. 23, 2024).

[38] Goodly also argues that the Complaint fails to sufficiently allege badges of fraud. I need not address this topic because I find that the Complaint contains specific factual allegations of the Debtors' actual intent to defraud their creditors. *See, e.g.*, *Drivetrain, LLC v. X. Commerce, Inc.*, Adv. No. 22-50448, 2023 WL 1804627, at *3 (Bankr. D. Del. Feb. 7, 2023) (explaining how the badges of fraud substitute for direct evidence of an actual intent to defraud).

[39] Compl. ¶¶ 33, 41.

[40] *Id.* ¶ 33 ("Defendant [FTXP] donations burnished Bankman-Fried's public image as a do-gooder even as he orchestrated one of the largest fraudulent schemes in U.S. history.").

[41] *Id.* ¶ 29.

[42] *See, e.g.*, *Drivetrain*, 2023 WL 1804627, at **3-4 (observing that the partnership contract with the defendant "was part of an elaborate ruse that played a critical role in the debtor's larger fraudulent scheme" "to trick investors into believing that the company was both successful enough to afford [defendant's] services and was generating significant revenue from those services."); *Carickhoff v. Wedbush Secs., Inc. (In re Live Well Fin., Inc.)*, 652 B.R. 699, 705-07 (Bankr. D. Del. 2023) (finding that the challenged transfers were made to stop the unraveling of the debtor's larger fraudulent bond scheme).

[43] *Cf. Giles*, 2024 WL 4562675, at *9 (finding no alleged facts explaining how a corporate acquisition furthered the FTX Insiders' fraudulent scheme).

6

### B.      The Unjust Enrichment Claim (Count 6)

Count 6 of the Complaint seeks to recover the Transfers from Goodly under a theory of unjust enrichment. Both the Trust and Goodly rely on Delaware law to support their briefing on this claim. "Unjust enrichment is defined as 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[44] "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[45] Goodly argues that support for the third and fourth elements is missing from the Complaint.

With respect to the third element, Goodly argues that the Complaint shows no direct relationship between Goodly's enrichment and the Debtors' impoverishment because FTXP was the transferor of the Transfer. Because the Complaint sets forth sufficient facts that the Debtors had a property interest in the funds transferred to Goodly, this argument fails.

With respect to the fourth element, Goodly asserts that the Complaint fails to suggest it was anything but an innocent recipient of the Transfers. Goodly is correct. The Complaint focuses on the actions and motivations of the FTX Insiders in making the Transfers and committing the fraud. It also states additional facts supporting the fraudulent transfer claims, such as insolvency and lack of reasonably equivalent value. It does not plead any facts suggesting Goodly had knowledge of the fraud or engaged in any other wrongdoing when it accepted the Transfers as charitable donations. Accordingly, under the facts as pled, an unjust enrichment claim has not been adequately stated under Delaware law. As the Delaware Court of Chancery explained in *Jacobs v. Meghji*:

> Because there must be an absence of justification for the defendant's benefit obtained through the challenge transaction, "[t]hat requirement usually entails some type of wrongdoing or mistake at the time of the transfer." Even for defendants who did not act with scienter, the absence of justification requirement suggests that the defendant must be at least "sufficiently aligned with [the] wrongdoer that [he] ought to disgorge an unearned benefit conferred upon [him] by the wrongdoer at the victim's expense."[46]

The Court further explained that there is a "narrow line of cases where an unjust enrichment claim 'may exist . . . even if the defendant retaining the benefit is not a wrongdoer.'"[47] However, a plaintiff must plead sufficient facts that "it would be unconscionable to allow them to retain that

---

[44] *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) (quoting 66 AM. JUR. 2D, *Restitution and Implied Contracts* § 3 at 945 (1973)).

[45] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[46] No. 2019-1022, 2020 WL 9591410, at *14 (Del. Ch. Oct. 8, 2020) (alterations in original) (internal citations omitted).

[47] *Id.* at *15 (alterations in original) (internal citations omitted).

benefit.'"[48]   In situations "where the alleged right of recovery 'is based solely on the unfairness' of a 'passive' party retaining a benefit it received at arm's-length and in good faith", a claim for unjust enrichment has not be permitted to stand.[49]

The Trust does not address Goodly's arguments regarding its innocence, but points to *Miller v. ANConnect, LLC (In re Our Alchemy, LLC)* in which the court determined that an unjust enrichment claim was properly pled by reliance on the same facts supporting plaintiff's fraudulent transfer claims.[50]   In that case, however, the defendants did not argue that they were innocent recipients of the transfers, and therefore the court did not have the opportunity to consider the issue that is before me today.[51]

## IV.   CONCLUSION

For the foregoing reasons, Count 6 is dismissed without prejudice. If the Trust wishes to amend, the Trust may file a motion seeking leave to do so pursuant to Federal Rule 15 within thirty (30) days of this Memorandum Order.   The remainder of the relief requested in the Motion to Dismiss is denied.

Dated: February 27, 2026
Wilmington, Delaware

Karen B. Owens
Chief Judge

---

[48] *Id.* (quoting *Schock v. Nash*, 732A.2d. 227, 233 (Del. 1999)).

[49] *Id.* (quoting *Territory of U.S. V.I. v. Goldman, Sachs & Co.*, 937 A.2d 760 796 n.161 (Del. Ch. 2007), *aff'd*, 2008 WL 2894840 (Del. July 29, 2008)).

[50] Adv. No. 18-50633, 2019 WL 4447545, at *11 (Bankr. D. Del. Sept. 16, 2019).

[51] *Id.* (addressing defendants' argument that a claim for unjust enrichment was unavailable because of the existence of an underlying contract).